UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICHAEL EVITT,

    Plaintiff,

    v.

EXPERIAN INFORMATION
SOLUTIONS, INC., et al.,

    Defendants.

3:23-cv-05294-LK

**EXPERIAN INFORMATION
SOLUTIONS, INC.'S REPLY IN
SUPPORT OF MOTION TO
COMPEL ARBITRATION**

**NOTE ON MOTION CALENDAR:
March 29, 2024**

## **INTRODUCTION**

Plaintiff does not dispute that he is a CreditWorks member. He does not dispute that, in order to enroll in the service, he had to agree to the Terms of Use. He does not dispute that the Terms of Use has an arbitration agreement and delegation clause that Experian Information Solutions, Inc. ("EIS") may enforce. And he does not challenge the enforceability of the arbitration agreement or the delegation clause. Instead, in opposing arbitration, Plaintiff presses two arguments: (1) contractual waiver (for EIS's supposed failure to initiate arbitration *against* Plaintiff within 30 days of receiving a copy of Plaintiff's lawsuit), and (2) waiver by litigation conduct (for EIS's participation in this lawsuit before moving to compel arbitration). The issue of waiver—whether contractual or through litigation conduct—has been delegated to an arbitrator.[1]

It is black-letter law, established by the Supreme Court and applied routinely by this Circuit, that parties may delegate arbitrability disputes to the arbitrator so long as they do so "clearly and unmistakably." Such "gateway" questions can include anything from whether the dispute falls within the agreement's scope, to whether the arbitration clause is void or voidable. Waiver is a gateway question of arbitrability too. It asks whether a party is entitled to enforce the arbitration agreement despite taking action allegedly inconsistent with the exercise of that right. Parties may therefore agree to let an arbitrator resolve any dispute over waiver, no less than any other threshold arbitrability question. The legal standard is the same, familiar one: Did the parties clearly and unmistakably agree to that delegation?

That standard is satisfied here. The agreement provides that "[a]ll issues are for the arbitrator to decide," save for one immaterial exception that serves only to prove the rule. The agreement also incorporates the AAA Rules, which confer on the arbitrator the exclusive authority to "rule on his or her own jurisdiction." It would be hard to craft a more comprehensive delegation clause. In short, waiver is an arbitrability question like any other, and can be delegated

---

[1] Regardless, as demonstrated below, even if the Court were to resolve Plaintiff's waiver challenges, neither one has merit.

1 to the arbitrator through unambiguous language. The delegation clause here admits of no

2 ambiguity. The Court therefore should grant EIS's motion to compel arbitration.

3 **ARGUMENT**

4 **I.     AN ARBITRATOR IS TO RESOLVE THE QUESTION OF WAIVER**

5        Waiver is a "question of arbitrability," and is therefore delegable to an arbitrator if an

6 arbitration agreement "clearly and unmistakably provide[s]" as much. *Martin v. Yasuda*, 829

7 F.3d 1118, 1123 (9th Cir. 2016) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79,

8 83 (2002)). The arbitration agreement here does so—in two independent ways. First, it delegates

9 "[a]ll issues" (but one) to the arbitrator. There is no clearer way to delegate all gateway questions

10 of arbitrability. Second, the agreement incorporates the AAA Rules, which empower the

11 arbitrator (and the arbitrator alone) to "rule on his or her own jurisdiction." AAA Rule 7(a).

12        **A.     The Arbitration Clause Makes A Clear And Unmistakable Delegation**

13        Even when parties agree to arbitrate their disputes, there are certain threshold questions

14 that the parties would likely expect to remain the province of the court. *Howsam*, 537 U.S. at 83.

15 Those "arbitrability" questions—whether the arbitration clause is legally valid, or whether it

16 reaches a particular dispute—are presumptively decided by courts. *Id.*

17        Contracting parties may delegate "gateway questions of arbitrability" to an arbitrator,

18 however, and if so, "a court may not override the contract." *Henry Schein, Inc. v. Archer & White*

19 *Sales, Inc.*, 139 S. Ct. 524, 529 (2019). To effectuate such a delegation, the parties must have

20 "'clearly and unmistakably provide[d]'" that an arbitrator should resolve the issue. *Howsam*, at

21 83; *see also id.* (arbitrability is "'for judicial determination [u]nless the parties clearly and

22 unmistakably provide otherwise'"). Waiver is but another gateway issue delegable under the same

23 clear-and-unmistakable standard. *Id*.

24        Because waiver is simply another "question of arbitrability" subject to the same clear-and-

25 unmistakable standard, the benchmark for delegation is the same as in other arbitrability contexts.

26 Put another way, there is no special test for questions about waiver. In all cases, an agreement

"clearly and unmistakably delegate[s]" an issue if its delegation provision "unambiguous[ly]"

encompasses it. *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016); *see also*

*First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (asking whether agreement contains

"silence or ambiguity about the question '*who* (primarily) should decide arbitrability'").

Put simply, if the "plain text" of an arbitration agreement provides that arbitrability should be

resolved in the arbitral forum, courts must give effect to that contractual choice. *EEOC v. Waffle*

*House, Inc.*, 534 U.S. 279, 294 (2002). Waiver is no exception.

Here, Plaintiff agreed to an arbitration agreement that facially delegated "all" (save for one)

threshold questions of arbitrability:

> All issues are for the arbitrator to decide, including the scope and
> enforceability of this arbitration provision as well as the
> Agreement's other terms and conditions, and the arbitrator shall
> have exclusive authority to resolve any such dispute relating to the
> scope and enforceability of this arbitration provision or any other
> terms of this Agreement including, but not limited to any claim that
> all or part of this arbitration provision or Agreement is void or
> voidable. However, if putative class or representative claims are
> initially brought by either party in a court of law, and a motion to
> compel arbitration is brought by any party, then the court shall have
> the power to decide whether this agreement permits class or
> representative proceedings.

There are three textual features of this delegation clause that, independently and certainly together,

eliminate any doubt as to its breadth.

First, it begins by stating, without qualification, that "[a]ll issues are for the arbitrator to

decide." As the Ninth Circuit has recognized when dealing with other questions of contract

interpretation, "'all' means all." *See, e.g.*, *Knott v. McDonald's Corp.*, 147 F.3d 1065, 1067 (9th

Cir. 1998); *Multnomah Legal Servs. Workers Union v. Legal Servs. Corp.*, 936 F.2d 1547, 1558

(9th Cir. 1991). Thus, when a "broad arbitration clause expressly commits all disputes to

arbitration," it provides a clear-and-unmistakable delegation as to any particular gateway issue

because "*all* disputes necessarily includes disputes as to arbitrability." *NASDAQ OMX Grp., Inc.*

1    *v. UBS Sec., LLC*, 770 F.3d 1010, 1031 (2d Cir. 2014).  The issue of waiver, like all other questions

2    of arbitrability, textually falls within the set of "[a]ll issues."

3    Second, the agreement enumerates, as examples, issues delegated to the arbitrator—not

4    just the "scope and enforceability of this arbitration provision," but also "any such dispute *relating*

5    *to* the scope and enforceability of this arbitration provision," "including, but not limited to any

6    claim that all or part of this arbitration provision … is void or voidable."  These issues—scope,

7    enforceability, and voidability—are all paradigmatic questions of arbitrability.  *Rent-A-Center,*

8    *Inc. v. Jackson*, 561 U.S. 63, 65, 68–69 (2010).  Their inclusion makes clear that issues of

9    arbitrability are among the "[a]ll issues" delegated by the arbitration agreement—indeed, they are

10   the foremost issues.  That clarity extends to waiver, which too is a question of arbitrability, *see*

11   *Martin*, 829 F.3d at 1123, whether it is considered as itself a matter of scope, enforceability, or

12   voidability, or as simply "relat[ed] to" those issues as an overlapping question of arbitrability.

13   Third, by expressly carving out a *different* category of issues from the clause—namely,

14   whether the agreement permits class or representative proceedings—the contract underscores that

15   all other facially delegated issues are for an arbitrator.  That follows from well-accepted principles

16   of contract interpretation:  When an agreement sets a "'general'" rule but specifies "narrow

17   exceptions," the implication is that there are no other exceptions to the rule.  *United States v.*

18   *Goodall*, 21 F.4th 555, 561–62 (9th Cir. 2021).  So the agreement's carveout giving the court

19   "power to decide whether this agreement permits class or representative proceedings" confirms

20   that the parties otherwise meant "[a]ll issues" to include *all* issues.  *See id.*

21   Taken together, these features reinforce that the parties have maximally delegated gateway

22   questions to the arbitrator.  District courts rightly have appreciated that the plain meaning of the

23   delegation language suffices to delegate issues of waiver by litigation conduct.  *Coulter v.*

24   *Experian Info. Sol'ns, Inc.*, 2021 WL 735726, at *4–5 (E.D. Pa. Feb. 25, 2021) (clause giving the

25   arbitrator "exclusive authority to resolve 'all issues'" precluded the court from considering

26   "whether Defendant waived its right to arbitrate"); *Ewers v. Trans Union, LLC*, 2023 WL 5435921,

1   at *2 (S.D. Ind. Aug. 17, 2023) (same); *Cline v. Equifax Info. Servs., LLC*, 2023 WL 3872392, at

2   *3 (S.D. Ind. May 30, 2023) (same).  This Court should rule in the same manner.

3   **B.     Incorporation Of The AAA Rules Independently Expresses A Clear And**
        **Unmistakable Delegation**
4

5       Rule 7(a) of the AAA Rules—expressly incorporated into the contract—gives the arbitrator

6   "power to rule on his or her own jurisdiction[.]"  Language incorporated through the AAA Rules

7   can constitute a clear-and-unmistakable delegation just like language directly included in the

8   arbitration agreement.  The Ninth Circuit so recognized in *Brennan v. Opus Bank*, where it held

9   that an arbitration agreement incorporating the AAA Rules—and in particular Rule 7(a)—was an

10  unambiguous delegation of arbitrability.  796 F.3d 1125, 1128–31 (9th Cir. 2015).

11      While *Brennan* involved agreements between sophisticated parties, and the court limited

12  its holding accordingly, its logic applies equally in the consumer context.  After all, the clear-and-

13  unmistakable standard is simply a means of giving effect to the parties' contractual choices, and it

14  is not just sophisticated parties who can choose to incorporate rules from other sources.  Moreover,

15  nothing in the standard or in the Ninth Circuit's decisions suggests that the clear-and-unmistakable

16  test otherwise applies any differently depending on the sophistication of the parties.

17      For instance, the Ninth Circuit has never discussed the parties' sophistication when

18  applying the standard to delegations made directly in the text of an arbitration agreement.  *See*,

19  *e.g.*, *Mohamed*, 848 F.3d at 1208–09.  And the strong weight of authority both in this Circuit and

20  elsewhere holds that the incorporation of the AAA Rules can suffice to delegate arbitrability

21  regardless of the parties' sophistication.  *See*, *e.g.*, *Brennan*, 796 F.3d at 1130–31 (observing that

22  the "vast majority of the circuits" do not distinguish based on sophistication when finding clear

23  and unmistakable delegations through incorporated rules); *Zaimi v. Neiman Marcus Grp., LLC*,

24  No. 2:22-cv-02972, 2022 WL 19569536, at *4 (C.D. Cal. Aug. 31, 2022) ("'the greater weight of

25  authority has concluded that [*Brennan*] applies similarly to non-sophisticated parties'").

26

1  Here, the incorporated AAA Rule 7(a) is clear-and-unmistakable evidence that the parties

2  intended to delegate all questions of arbitrability, including the waiver issue. As the Ninth Circuit

3  found in *Brennan*, in giving the arbitrator "the power to rule on his or her own jurisdiction," AAA

4  Rule 7(a), the AAA Rules delegate authority over issues of arbitrability generally. 796 F.3d at

5  1130. So Rule 7(a) provides a clear-and-unmistakable delegation not only with regard to the

6  immediate challenge in *Brennan* (whether the agreement was unenforceable on account of

7  unconscionability) but on any other questions of arbitrability that may arise—including the

8  question of waiver by litigation conduct. *See, e.g.*, *Mitchell v. Corelogic, Inc.*, No. 17-cv-2274,

9  2019 WL 6481306, at *3–4 (C.D. Cal. Apr. 9, 2019) (applying *Brennan*; holding that incorporation

10 of AAA rules means that "this Court must allow the arbitrator to determine whether [defendant]

11 has waived arbitrability"). Such a categorical delegation over jurisdiction is "'clear and

12 unmistakable' evidence" that the parties left the waiver issue for the arbitrator's resolution.

13 *See Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 394 (2d Cir. 2011) (applying a similar

14 delegation provision to arguments that a party was waived or estopped from arbitration based on

15 its prior agreement to litigation).

16     In sum, an argument that a party waived its contractual right to arbitrate is, at bottom,

17 a dispute over arbitrability, relating to the scope, enforceability, and voidability of the arbitration

18 term. Like all issues of arbitrability, disputes about waiver must be left to the arbitrator if the

19 parties clearly and unmistakably so decree. Here, the arbitration agreement did just that—twice.

20 Both by the terms of the agreement itself and under the AAA Rules that it incorporated by

21 reference, the parties designated waiver as an issue for the arbitrator to adjudicate. The Court

22 therefore should grant the motion to compel arbitration. Plaintiff is free to press his waiver

23 challenges before an arbitrator.

24 ///

25 ///

26 ///

1  **II.    EIS DID NOT WAIVE ITS ARBITRATION RIGHTS**

2      **A.      There Was No Contractual Waiver**

3          Plaintiff's argument that EIS waived its arbitration rights because EIS did not initiate

4  arbitration against Plaintiff within 30 days of receiving a copy of Plaintiff's federal lawsuit is based

5  upon a misreading of the arbitration agreement.  The relevant contract provision, largely omitted

6  from Plaintiff's brief, reads as follows:

7          A party *who intends to seek arbitration* must first send to the other,
           by certified mail, *a written Notice of Dispute* ("Notice").  The Notice
8          to ECS should be addressed to: General Counsel, Experian, 475
           Anton Boulevard, Costa Mesa, CA 92626 ("Notice Address").
9          The Notice must describe the nature and basis of the claim or dispute
           and set forth the specific relief you seek from ECS ("Demand").
10         *If ECS and you do not reach an agreement to resolve the claim
           within 30 days <u>after</u> the Notice is received*, you or ECS may
11         commence an arbitration proceeding.  During the arbitration, the
           amount of any settlement offer made by ECS or you shall not be
12         disclosed to the arbitrator until after the arbitrator determines the
           amount, if any, to which you or ECS is entitled.
13

14

15  On its face, the 30-day period that Plaintiff relies upon is not a time period within which arbitration

16  must be commenced; instead, it is the time period within which the parties are to meet and confer

17  to attempt to resolve a claim or dispute informally before proceeding to arbitration.  Moreover, it

18  is Plaintiff—not EIS—that asserts claims.  Yet, Plaintiff never provided EIS with a "Notice of

19  Dispute" over such claims, much less conferred with EIS to resolve such claims informally.

20  Thus, it is Plaintiff—not EIS—that failed to comply with the contract.  And, even if the Court were

21  to construe the service of Plaintiff's complaint as a contractual "Notice of Dispute," Plaintiff

22  concedes that EIS's motion to compel arbitration was filed over 30 days after such service was

23  effectuated.  Thus, there was no contractual waiver.

24      **B.      There Was No Waiver Through Litigation Conduct**

25          Waiver occurs where a party has "intentional[ly] relinquish[ed] or abandon[ed] ... a known

26  right."  *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022)).  In the Ninth Circuit, post-*Morgan*,

"waiver does not occur by mere participation in litigation; there must be judicial litigation of the merits of arbitrable issues." *Ontiveros v. Zamora*, 2013 WL 593403, at *10 (E.D. Cal. Feb. 14, 2013); *Capps v. JPMorgan Chase Bank, N.A.*, 2023 WL 3030990, at *7 (E.D. Cal. Apr. 21, 2023) (compelling arbitration under the CreditWorks Terms of Use, and finding no waiver because "in the nine-and one-half months since plaintiffs initiated this action, defendant Experian has not sought nor obtained any ruling from the court on the merits of the action"). As the party arguing waiver, Plaintiff bears the burden of proof. *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1015 (9th Cir. 2023). Plaintiff has not met his burden.

In assessing whether EIS's intentional acts were inconsistent with it exercising its right to compel arbitration, the court must consider "the totality of the parties' actions." *Armstrong*, 59 F.4th at 1015 (citation omitted). *Armstrong* instructs that "a party generally 'acts inconsistently with exercising the right to arbitrate when it (1) makes an intentional decision not to move to compel arbitration <u>and</u> (2) actively litigates the merits of a case for a prolonged period of time in order to take advantage of being in court.'" *Id*. (citation omitted) (emphasis added). While the precise length of delay has not been specified as indicating such a conscious decision, the Ninth Circuit has indicated that litigating in federal court for well over a year in combination with the filing of substantive motions weighs in favor of a finding of waiver. *See Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 476 (9th Cir. 2023) (finding that the defendant acted inconsistently with its right to compel arbitration where it filed a motion for partial summary judgment as to a key issue in the case and litigated the action for nearly five years); *Martin*, 829 F.3d at 1126 (finding the right to arbitration waived where the defendant litigated in federal court for seventeen months, filed a motion to dismiss on a key merits issue, received an adverse ruling, and then moved to compel arbitration); *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 759 (9th Cir. 1988) (finding waiver where defendant litigated in court for two years and filed a motion to dismiss on the merits). "Particularly relevant here," the court in *Fox* explained, "moving to compel arbitration

within a year of the filing of plaintiff's complaint, in combination with never seeking or obtaining a ruling on the merits, has been found by the Ninth Circuit to indicate no waiver of the right to arbitrate." *Fox v. Experian Information Solutions, Inc.*, 2024 WL 755804, at *4 (N.D. Cal. Feb. 23, 2024) (finding that EIS did not waive its arbitration rights) (citing *Armstrong*, 59 F.4th at 1016 (finding no waiver under these circumstances, despite the defendant's propounding of limited discovery requests)); *Guerrero v. Haliburton Energy Servs. Inc.*, 2018 WL 3615840, at *4 (E.D. Cal. July 26, 2018) (fact that "the Court has not reached the merits of the case in its rulings to date" suggests no waiver occurred); *Newirth by & through Newirth v. Aegis Senior Communities, LLC*, 931 F. 3d 935, 940 (9th Cir. 2019) ("Seeking a decision on the merits of a key issue in a case indicates an intentional and strategic decision to take advantage of the judicial forum.").

The litigation activity in this case shows that EIS has made no attempt to seek a decision on the merits of any issue in the case, much less a clear intent on EIS's part to waive its arbitration rights. The instant motion is the first motion that EIS has filed in the case. EIS has not engaged in any discovery of its own. While Plaintiff points to discovery that he and others have taken, the focus of waiver is on *EIS's conduct*—not the conduct of others. *Morgan*, 596 U.S. at 417 ("To decide whether a waiver has occurred, the court focuses on the actions of the person who held the right; the court seldom considers the effects of those actions on the opposing party."). Plaintiff also argues that EIS's failure to plead arbitration as an affirmative defense gives rise to waiver. It does not. *Magno v. Experian Information Solutions, Inc.*, 2018 WL 2984979, at *3 (W.D. Wash. 2018) (Settle, J.) (no waiver in failing to plead arbitration as an affirmative defense). Plaintiff points to routine matters in which EIS engaged—serving initial disclosures, participating in a joint status report, and engaging in settlement talks—that also do not give rise to waiver. *Ontiveros,* 2013 WL 593403, at *10 ("waiver does not occur by mere participation in litigation; there must be judicial litigation of the merits of arbitrable issues"); *Weber v. X Corp.*, 2024 WL 470255, at *6 (E.D. Wash. Jan. 8, 2024) ("In all the waiver cases . . . where courts have declined

to enforce an arbitration agreement, the party seeking to compel arbitration has not only failed to respond to a demand for arbitration or to compel arbitration itself but also either (1) expressly disavowed the other party's right to arbitrate, or (2) taken advantage of the judicial process by engaging in protracted litigation efforts[.]") (internal citations omitted).  Finally, Plaintiff argues delay of about 12 months.  But delay, without more, does not constitute waiver.  *Fox*, 2024 WL 755804, at *4; *Guerrero*, 2018 WL 3615840, at *4; *Sywula v. Teleport Mobility, Inc.*, Case No. 21-cv-01450-BAS-SBC, 2023 WL 4630620, at *7 (C.D. Cal. July 18, 2023) (rejecting waiver, and holding that the plaintiff was required to "'show something more than mere delay,'" and "bears the burden to establish that, while Defendants sat idly upon their right to arbitrate, they undertook a 'conscious decision . . . to seek judicial judgment on the merits of [the] arbitrable claims'"); *Nicosia* v. Amazon.com, Inc., 2023 WL 309545, at *4 n.2  (2d Cir. Jan. 19, 2023) ("Amazon had not waived its right to arbitrate" after 32 months of litigation "because Amazon had not 'engaged in litigating any substantial merits questions' before seeking arbitration."); *Cimillo v. Experian Information Solutions, Inc.*, 2023 WL 2473403, at *9-*10 (S.D.N.Y. Mar. 13, 2023) (no waiver where EIS moved to compel arbitration nine months after lawsuit was filed and had answered the complaint, participated in court conferences, settlement discussions, and mediation, and served and responded to written discovery).

## **CONCLUSION**

The Motion to Compel Arbitration should be granted.

I certify that this memorandum contains 3,502 words, in compliance with the Local Civil Rules.

///

///

///

///

1

2     DATED: March 20, 2024.                    STOEL RIVES LLP

3

4                                               *s/ Rachel D. Groshong*
                                                Rachel D. Groshong, WSBA No. 47021
5                                               STOEL RIVES LLP
                                                600 University Street, Suite 3600
6                                               Seattle, WA  98101
                                                Telephone:  206.624.0900
7                                               Facsimile:  206.386.7500
                                                rachel.groshong @stoel.com
8
                                                *Attorneys for Defendant*
9                                               *Experian Information Solutions, Inc.*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

EXPERIAN INFORMATION SOLUTIONS, INC.'S REPLY IN SUPPORT OF MOTION TO
COMPEL ARBITRATION (3:23-cv-05294-LK) - 12

1 **<u>CERTIFICATE OF SERVICE</u>**

2   I hereby certify that on the date below, I caused the foregoing document to be electronically

3 filed with the Clerk of the Court using the CM/ECF system, which will send notification of such

4 filing to all counsel of record.

5  Dated this 20th day of March 2024.

6          By: */s/Rachel D. Groshong*<u>     </u>

7            Rachel D. Groshong, WSBA No. 47021

8            Attorneys for Defendant
           Experian Information Solutions, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

CERTIFICATE OF SERVICE
(3:23-cv-05294-LK)

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

122719820.2 0030176-00384