UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MICHAEL EVITT,<br><br>             Plaintiff,<br><br>    v.<br><br>EXPERIAN INFORMATION<br>SOLUTIONS INC. et al.,<br><br>             Defendants. | CASE NO. 3:23-cv-05294-LK<br><br>ORDER GRANTING MOTION TO<br>COMPEL ARBITRATION AND<br>DENYING MOTION TO STAY<br>AND FOR PROTECTIVE ORDER<br>AS MOOT |

This matter comes before the Court on Defendant Experian Information Solutions, Inc.'s motion to compel arbitration. Dkt. No. 42. Experian also moves the Court to stay discovery and other pending deadlines and for a protective order pending resolution of its motion to compel arbitration. Dkt. No. 44. For the following reasons, the Court grants Experian's motion, stays proceedings in this case as to Experian, and denies Experian's motion to stay and for a protective order as moot.

**I.   BACKGROUND**

Experian is a consumer credit reporting agency that provides consumer reports as defined

ORDER GRANTING MOTION TO COMPEL ARBITRATION AND DENYING MOTION TO STAY AND FOR PROTECTIVE ORDER AS MOOT - 1

by 15 U.S.C. § 1681a(d) and (f). Dkt. No. 1-2 at 4–5; Dkt. No. 3 at 4. It is also an affiliate of ConsumerInfo.com, Inc., which does business as Experian Consumer Services ("ECS") and operates a credit monitoring service called CreditWorks. Dkt. No. 43 at 2–3. Plaintiff Michael Evitt enrolled in CreditWorks on June 28, 2022. *Id.* at 3.

To enroll in CreditWorks, Evitt had to agree to a "Terms of Use Agreement." Dkt. No. 43 at 3–4; Dkt. No. 43-1 at 2. That agreement includes a section entitled "Dispute Resolution by Binding Arbitration," which provides in relevant part:

> ECS and you agree to arbitrate all disputes and claims between us arising out of or relating to this Agreement to the maximum extent permitted by law, except any disputes or claims which under governing law are not subject to arbitration. This agreement to arbitrate is intended to be broadly interpreted and to make all disputes and claims between us directly relating to the provision of any Service and/or your use of any Website subject to arbitration to the fullest extent permitted by law. The agreement to arbitrate includes, but is not limited to:
>
> claims arising out of or relating to any aspect of the relationship between us arising out of any Service or Website, whether based in contract, tort, statute (including, without limitation, the Credit Repair Organizations Act) fraud, misrepresentation or any other legal theory; claims that arose before this or any prior Agreement (including, but not limited to, claims relating to advertising); . . . and claims that may arise after the termination of this Agreement.
>
> . . .
>
> The arbitration will be governed by the Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer Related Disputes (collectively, "AAA Rules") of the American Arbitration Association ("AAA"), as modified by this Agreement, and will be administered by the AAA.
>
> . . .
>
> All issues are for the arbitrator to decide, including the scope and enforceability of this arbitration provision as well as the Agreement's other terms and conditions, and the arbitrator shall have exclusive authority to resolve any such dispute relating to the scope and enforceability of this arbitration provision or any other term of this Agreement including, but not limited to any claim that all or any part of this arbitration provision or Agreement is void or voidable. However if putative class or representative claims are initially brought by either party in a court of law, and a motion to compel arbitration is brought by any party, then the court shall have the power to decide whether this agreement permits class or representative proceedings.

ORDER GRANTING MOTION TO COMPEL ARBITRATION AND DENYING MOTION TO STAY AND FOR PROTECTIVE ORDER AS MOOT - 2

Dkt. No. 43-2 at 9–11 (2022 Terms of Use Agreement); *see also* Dkt. No. 43-3 at 8–9 (2023 Terms of Use Agreement).[1] The arbitration provision defines "ECS" and "us" to include ECS's "respective parent entities, subsidiaries, affiliates (including, without limitation, [its] service providers), agents, employees, predecessors in interest, successors and assigns[.]" Dkt. No. 43-2 at 9; Dkt. No. 43-3 at 8.[2] "Service" includes, among other things, "the provision of any of [ECS's] products and services, including credit report(s), credit risk score(s), credit monitoring, credit score monitoring and credit score tracking (including all the data and information contained therein)[.]" Dkt. No. 43-2 at 2; Dkt. No. 43-3 at 2.

On March 15, 2023, Evitt filed a lawsuit in Kitsap County Superior Court under the Fair Credit Reporting Act against Experian, Equifax Information Services LLC, and Trans Union LLC, alleging that they violated 15 U.S.C. §§ 1681i and 1681e(b) when they failed to (1) "delete inaccurate information in [his] credit files," (2) conduct lawful reinvestigations, (3) mark his account as disputed, (4) maintain reasonable procedures to "filter and verify disputed information in [his] credit files," and (5) "establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of" defendants' credit reports. Dkt. No. 1-2 at 14–15. On April 6, 2023, Trans Union removed the action to this Court with the consent of Experian and Equifax. Dkt. Nos. 1, 1-4.

The case got off to a slow start. Experian answered Evitt's complaint on April 7, 2023, Dkt. No. 3, and timely submitted its initial disclosures to Evitt on June 13, 2023, Dkt. No. 48-6 at 2–4, but settlement discussions and other early dealings among the parties resulted in extension of

---

[1] The 2022 Terms of Use Agreement was in effect when Evitt enrolled in CreditWorks, while the 2023 Terms of Use Agreement was in effect when Evitt filed this lawsuit. Dkt. No. 43 at 4.

[2] The overarching agreement similarly defines "ECS" or "us" to include ECS's "predecessors in interest, successors and assigns, affiliates, and any of its third party service providers . . . who ECS uses in connection with the provision of the Services[.]" Dkt. No. 43-2 at 2; *see also* Dkt. No. 43-3 at 2 (expressly identifying Experian Information Solution, Inc. as an affiliate).

ORDER GRANTING MOTION TO COMPEL ARBITRATION AND DENYING MOTION TO STAY AND FOR PROTECTIVE ORDER AS MOOT - 3

1  Equifax's deadline to answer until at least July 11, 2023, and a concomitant extension of the
2  deadlines for the Rule 26 conference, initial disclosures, and joint status report, *see* Dkt. Nos. 9,
3  18, 24; 5/12/2023 docket entry. On August 5, 2023, all parties (including Experian) submitted a
4  Joint Status Report ("JSR"). Dkt. No. 25. The parties noted that they were engaged in settlement
5  negotiations at the time. *Id.* at 7. In the meantime, over the course of four months, the parties filed
6  several unsuccessful agreed or unopposed motions to issue subpoenas to obtain information from
7  the financial institutions involved in the underlying identity theft and fraud, ultimately only
8  partially succeeding in these efforts on September 13, 2023. Dkt. Nos. 20–23, 27, 30–35.

9  Following the parties' submission of the JSR, the Court set a trial date for September 9,
10 2024. Dkt. No. 26 at 1. Discovery motions were due on March 13, 2024, and discovery was to be
11 completed by April 12, 2024. *Id.* at 1–2. During discovery, both Trans Union and Equifax issued
12 discovery requests to Evitt. *See* Dkt. Nos. 48-13, 48-17. Evitt issued discovery requests to
13 Experian, Dkt. No. 48-16; however, by the time it filed its motion to compel arbitration, Experian
14 had yet to seek any discovery from Evitt or respond to Evitt's requests, *see* Dkt. No. 48 at 3–6;
15 Dkt. No. 59 at 2; Dkt. No. 61 at 10. Evitt also issued third-party subpoenas to two financial
16 agencies (Bank of America N.A. and Wells Fargo, N.A.), to which Experian stipulated. *See* Dkt.
17 No. 48 at 4–5; *see also* Dkt. Nos. 48-11, 48-15.

18 On March 1, 2024, Experian moved to compel arbitration, raising for the first time its rights
19 under the arbitration provision. Dkt. No. 42. Four days later, it filed a motion for a protective order
20 and to stay discovery and other deadlines pending resolution of its motion to compel arbitration.
21 Dkt. No. 44. Evitt opposed both motions, arguing that Experian waived its right to arbitration by
22 (1) failing to commence arbitration within 30 days of receiving Evitt's complaint as required by
23 the Terms of Use Agreement; (2) failing to list arbitration in its affirmative defenses; and (3) taking
24 other "actions inconsistent with [its] right to arbitrate" in this litigation. Dkt. No. 48 at 1–2, 6–13.

ORDER GRANTING MOTION TO COMPEL ARBITRATION AND DENYING MOTION TO STAY AND FOR
PROTECTIVE ORDER AS MOOT - 4

Experian argues that waiver is not an issue for the Court to decide because the arbitration provision delegates the issue to an arbitrator, Dkt. No. 61 at 3–7, and in any event, there is no waiver, *id.* at 8–11.

## II.  DISCUSSION

For the reasons laid out below, the Court concludes that the parties' agreement does not delegate the question of waiver through litigation conduct to an arbitrator. However, Experian did not waive its right to arbitration through its conduct in this case.

### A.  Jurisdiction

The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 because Evitt asserts claims under the Fair Credit Reporting Act. Dkt. No. 1-2 at 14–15.

### B.  Legal Standard

Under the Federal Arbitration Act ("FAA"), courts must enforce a commercial agreement to "arbitrat[e] a controversy thereafter arising out of such contract[.]" 9 U.S.C. § 2. "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition" the district court for "an order directing that such arbitration proceed in the manner provided for in such agreement." *Id.* § 4.

When deciding whether to compel arbitration, a court must generally "determine two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)); *accord Revitch v. DIRECTV, LLC*, 977 F.3d 713, 716 (9th Cir. 2020). Questions of arbitrability are generally for "judicial determination unless the parties clearly and unmistakably provide otherwise." *Martin v. Yasuda*, 829 F.3d 1118, 1123 (9th Cir. 2016); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (courts should not assume, absent clear and unmistakable evidence, that

the parties agreed to arbitrate arbitrability). However, "procedural" questions such as contract-based waiver are presumptively for the arbitrator to decide. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002); *Martin*, 829 F.3d at 1123; *see also Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 219 (3d Cir. 2007) (under *Howsam*, questions of "non-compliance with contractual conditions precedent to arbitration" are for the arbitrator to decide); *JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 393–94 (6th Cir. 2008) (same).

Here, it is undisputed that the parties have an agreement to arbitrate. Evitt does not dispute that he agreed to the Terms of Use Agreement (including the arbitration provision) when he enrolled in CreditWorks. *See generally* Dkt. No. 48. Nor does he dispute that Experian is an affiliate of ECS with the right to enforce the arbitration provision. *See generally id.* Thus, the narrow issue before the Court is whether that provision delegates these issues of waiver to an arbitrator, and if not, whether Experian waived its rights.

**C.     The Arbitration Provision Delegates the Issue of Contractual Waiver to an Arbitrator, But Does Not Do So With Respect to Litigation Conduct Waiver**

As the party seeking to compel arbitration, Experian bears the burden of proving by a preponderance of the evidence that the arbitration provision includes the delegations it claims it does. *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015). Experian argues that the arbitration does so in two independent ways: first, the arbitration provision delegates "all issues" to an arbitrator, Dkt. No. 42 at 4, and second, the provision expressly incorporates the AAA rules. *Id.* at 5. In response, Evitt suggests that the Court should follow prior decisions from courts within this Circuit finding that Experian's contract language "fails the 'clear and unmistakable' test." Dkt. No. 48 at 13 (citing *Slaten v. Experian Info. Sols., Inc.*, No. CV 21-09045-MWF (EX), 2023 WL 6890757, at *3–4 (C.D. Cal. Sept. 6, 2023); *DeVries v. Experian Info. Sols., Inc.*, No. 16-CV-02953-WHO, 2017 WL 733096, at *10 (N.D. Cal. Feb. 24, 2017)).

To recap, the arbitration provision states that the parties "agree to arbitrate all disputes and claims between [them] arising out of or relating to this Agreement," including "claims arising out of or relating to any aspect of the relationship between us arising out of any Service," to the "maximum extent permitted by law,"; "[a]ll issues are for the arbitrator to decide" such that "the arbitrator shall have exclusive authority to resolve any such dispute relating to the scope and enforceability of this arbitration provision or any other term of this Agreement." Dkt. No. 43-2 at 10; Dkt. No. 43-3 at 9. The provision then carves out one circumstance—class or representative proceedings—where "the court shall have the power to decide whether th[e] agreement permits [those] proceedings," Dkt. No. 43-2 at 10–11; Dkt. No. 43-3 at 9, indicating that the arbitrator has the power to decide whether "the agreement permits" arbitration in all other circumstances, *see Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1234 (9th Cir. 2013) (employing the rule of construction "that mention of one matter implies the exclusion of all others"). The provision also states that arbitration will be governed by the AAA Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer Related Disputes, Dkt. No. 43-2 at 10; Dkt. No. 43-3 at 9, which include the rule that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement," Am. Arb. Ass'n, *Consumer Arbitration Rules* 17 (2014), https://www.adr.org/sites/default/files/Consumer-Rules-Web_0.pdf; *see also* Am. Arb. Ass'n, *Commercial Arbitration Rules and Mediation Procedures* 14 (2022), https://adr.org/sites/default/files/Commercial-Rules_Web.pdf.[3]

---

[3] These rules state that "[a] dispute arising out of a consumer arbitration agreement will be administered under the AAA's Consumer Arbitration Rules." *Id.* at 10.

ORDER GRANTING MOTION TO COMPEL ARBITRATION AND DENYING MOTION TO STAY AND FOR PROTECTIVE ORDER AS MOOT - 7

1. The Arbitration Provision Delegates the Issue of Contract-Based Waiver to the Arbitrator

Evitt's argument that Experian waived its right to arbitrate by breaching the arbitration provision's alleged 30-day limit to commence arbitration, Dkt. No. 48 at 10–11, falls squarely within the procedural issues presumptively delegated to an arbitrator. *BG Grp., PLC v. Republic of Argentina*, 572 U.S. 25, 34 (2014) ("[C]ourts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration."). The language of the arbitration provision clearly delegates this issue to the arbitrator by giving the arbitrator the exclusive authority to resolve disputes "relating to . . . any . . . term of this Agreement." Dkt. No. 43-2 at 10; Dkt. No. 43-3 at 9. Thus, this issue is for the arbitrator to decide.

2. The Arbitration Provision Does Not Delegate the Issue of Conduct-Based Waiver to the Arbitrator

Although whether a party waived its right to arbitrate through its litigation conduct "implicates courts' authority to control *judicial* procedures or to resolve issues arising from *judicial conduct*," *Ehleiter*, 482 F.3d at 219 (cleaned up), and the court is therefore in the best position to determine whether a party has forfeited any claim to arbitration through its abuse of those judicial procedures, *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 13–14 (1st Cir. 2005); *JPD*, 539 F.3d at 394, parties can still delegate this issue to an arbitrator through clear and unmistakable language, *Martin*, 829 F.3d at 1123–24. Here, the parties did not do so.

While some courts have concluded that language similar to that here is sufficient to encompass waiver by litigation conduct, *see, e.g.*, *Creason v. Experian Info. Sols., Inc.*, No. 5:21-CV-39-BJB, 2024 WL 1221183, at *4 (W.D. Ky. Mar. 21, 2024), the weight of authority in this Circuit is to the contrary. "In the Ninth Circuit, the burden of delegating arbitrability is particularly onerous where the party opposing arbitration claims waiver by litigation conduct." *Weber v. X*

*Corp.*, No. 2:23-CV-0233-TOR, 2024 WL 470255, at *4 (E.D. Wash. Jan. 8, 2024). It is not enough, for example, for the agreement to state that "[a]ll determinations as to the scope, enforceability and effect of this arbitration agreement shall be decided by the arbitrator, and not by a court." *Martin*, 829 F.3d at 1124. Nor is it enough to delegate to the arbitrator "[a]ny controversy . . . arising out of or related to" the agreement, even when the agreement incorporates AAA rules allowing the arbitrator to determine jurisdiction and the "existence, scope or validity" of the arbitration agreement. *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1117 (9th Cir. 2008); *see also* Am. Arb. Ass'n., *Employment Arbitration Rules and Mediation Procedures* 12 (2006), https://www.adr.org/sites/default/files/Employment%20Arbitration%20Rules%20and%20Mediation%20Procedures%20Jul%2001%2C%202006.pdf. Even a provision giving the arbitrator "exclusive authority to resolve disputes relating to the interpretation, applicability, enforceability or formation of th[e] Agreement including, but not limited to," whether any part of the agreement "is void or voidable and pertaining to any waiver" did not suffice where the conjunctive word "and" created ambiguity. *Armstrong v. Michaels Stores, Inc.*, No. 17-CV-06540-LHK, 2018 WL 6505997, at *7–8 (N.D. Cal. Dec. 11, 2018) ("Further ambiguity exists because a layperson, such as Plaintiff, may not understand the phrase 'pertaining to any waiver' to necessarily refer to a situation where an employee files suit in court and the employer delays seeking arbitration."), *aff'd*, 59 F.4th 1011 (9th Cir. 2023); *see also Vine v. PLS Fin. Servs., Inc.*, 689 F. App'x 800, 804 (5th Cir. 2017) ("Though the parties' agreement requires arbitration of 'any claim or attempt to set aside this Arbitration Provision,' it does not explicitly mention litigation-conduct waiver.").

And although "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability" where the parties are sophisticated, *Brennan*, 796 F.3d at 1130, incorporation of those rules alone does not encompass waiver by litigation conduct, at least in matters like this one that involve an unsophisticated party. *See Int'l*

ORDER GRANTING MOTION TO COMPEL ARBITRATION AND DENYING MOTION TO STAY AND FOR PROTECTIVE ORDER AS MOOT - 9

*Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 999 F.3d 257, 264–65 (5th Cir. 2021) ("Though we've held that the express adoption of AAA rules can sometimes provide clear and unmistakable evidence that the parties agreed to arbitrate an issue, . . . the [AAA] rules do not expressly give arbitrators the power to resolve questions of waiver through litigation" such that "incorporation of those rules cannot supply the clear and unmistakable agreement that is required here." (cleaned up)); *Plaintiff's S'holders Corp. v. S. Farm Bureau Life Ins. Co.*, 486 F. App'x 786, 790 (11th Cir. 2012) (incorporation of the AAA rules did not constitute clear and unmistakable evidence of an agreement to arbitrate issues of conduct-based waiver); *Marie*, 402 F.3d at 15 ("There are no references to waiver or similar terms anywhere in the arbitration agreement. Neither party should be forced to arbitrate the issue of waiver by conduct without a clearer indication in the agreement that they have agreed to do so."); *Banq, Inc. v. Purcell*, No. 2:22-cv-00773-APG-VCF, 2023 WL 205759, at *1 n.1 (D. Nev. Jan. 17, 2023) ("Every circuit to consider the question of whether the AAA rules delegate th[e] question [of conduct-based waiver] to the arbitrator ha[s] concluded they do not.").

Because the arbitration provision does not clearly and unmistakably delegate the issue of waiver by litigation conduct to the arbitrator, the Court addresses it.

**D.     Experian Has Not Waived its Right to Arbitrate this Dispute Through its Litigation Conduct**

Evitt advances two arguments regarding litigation conduct waiver: he contends that Experian waived its right to arbitrate this dispute (1) by failing to raise arbitration as an affirmative defense and (2) through engaging in litigation for a prolonged period without raising its arbitration rights until now. Dkt. No. 48 at 2–3, 10–11, 13–15. The Court examines each argument in turn.

1. Experian Did Not Waive its Rights To Arbitrate By Failing to Raise it as an Affirmative Defense

The Ninth Circuit has "liberalized" the requirement under Federal Rule of Civil Procedure 8(c)(1) that defendants must raise affirmative defenses in their initial pleadings, allowing a defendant to raise an affirmative defense for the first time in a motion for judgment on the pleadings or summary judgment as long as the delay does not prejudice the plaintiff. *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001); *Magana v. Commonwealth of the N. Mar. I.*, 107 F.3d 1436, 1446 (9th Cir. 1997). Here, it is undisputed that Experian did not raise arbitration as an affirmative defense, Dkt. No. 3 at 19–21, and that it raised its arbitration rights for the first time in its motion to compel arbitration.

Evitt claims that he was prejudiced by Experian's "unnecessary delay" through "expense associated with litigation that would not have been necessary if the parties had switched to arbitration 12 months ago" and through Experian "tak[ing] advantage of this Court's resources [to] obtain substantial discovery to which [it] would not have been entitled in arbitration." Dkt. No. 48 at 6, 12. However, Experian "has not engaged in any discovery of its own," Dkt. No. 61 at 10, and the only discovery Evitt has produced to Experian is associated with his initial disclosures—something he was already obligated to produce to the other two credit reporting agency defendants, *see* Dkt. No. 48 at 3–5. Evitt makes no attempt to demonstrate that such information would have been unavailable to Experian in arbitration. Similarly, Evitt's settlement discussions with Experian would presumably have occurred regardless of whether the dispute was before this Court or an arbitrator. *Id.* at 5. And finally, any minimal added expense to Evitt associated with issuing discovery requests to Experian, with Experian's participation in "framing the parties' Joint Status Report and Discovery Plan," or with its stipulation or non-opposition to certain motions is not enough to establish prejudice. *Id.* at 3–4; *see also Brownstone Inv. Grp., LLC v. Levey*, 514 F.

Supp. 2d 536, 551 (S.D.N.Y. 2007) (recognizing that pretrial expense and delay, without more, do not constitute prejudice sufficient to support waiver).

In sum, Experian's failure to assert arbitration as an affirmative defense has not waived its arbitration rights.

2. Experian Did Not Waive its Rights To Arbitrate Through its Litigation Conduct

To establish that Experian waived its arbitration rights through its litigation conduct, Evitt must demonstrate that Experian (1) knew that it had an existing right to compel arbitration and (2) took intentional acts inconsistent with that existing right. *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1015 (9th Cir. 2023).[4]

It is undisputed that Experian knew it had an existing right to compel arbitration. However, the parties dispute the second element of the waiver test. Evitt argues that Experian "relinquished, abandoned, and waived its right to arbitration through intentional acts inconsistent with Experian's right to arbitrate," including failing to raise arbitration as an affirmative defense, engaging in "significant litigation" over a 12-month period, and stipulating to the issuance of third-party subpoenas. Dkt. No. 48 at 10–13. Experian counters that there was no conduct-based waiver because it "has made no attempt to seek a decision on the merits of any issue in the case" and its other conduct does not evince "a clear intent . . . to waive its arbitration rights." Dkt. No. 61 at 10; *see id.* 8–11. The Court agrees with Experian.

Courts "consider the totality of the parties' actions" when assessing whether a party "took acts inconsistent with its right to arbitration[.]" *Armstrong*, 59 F.4th at 1015 (cleaned up). "[A] party generally 'acts inconsistently with exercising the right to arbitrate when it (1) makes an intentional decision not to move to compel arbitration and (2) actively litigates the merits of a case

---

[4] The party asserting waiver no longer needs to prove prejudice. *See Morgan v. Sundance, Inc.*, 596 U.S. 411, 419 (2022).

for a prolonged period of time in order to take advantage of being in court.'" *Id.* (quoting *Newirth ex. rel. Newirth v. Aegis Senior Cmtys., LLC*, 931 F.3d 935, 941 (9th Cir. 2019), *abrogated on other grounds by Morgan*, 596 U.S. at 417–19). "[A] party's extended silence and delay in moving for arbitration may indicate a conscious decision to continue to seek judicial judgment on the merits of the arbitrable claims, which would be inconsistent with a right to arbitrate." *Martin*, 829 F.3d at 1125 (cleaned up).

Here, as Evitt points out, Experian certainly did not help its case for arbitration by failing to raise it as an affirmative defense and failing to move to compel arbitration for nearly a year while litigation was ongoing. Dkt. No. 48 at 10–13. But contrary to Evitt's contentions, Experian also did not actively litigate the merits of the case during this time. As noted above, Experian issued no discovery requests and did not file any motions (other than minor stipulated motions) until its motion to compel arbitration. *See id.* at 2–6. And Experian's dilatory conduct alone cannot establish waiver. *See Fox v. Experian Info. Sols., Inc.*, No. 1-22-cv-01197-DAD-DB, 2024 WL 755804, at *5 (E.D. Cal. Feb. 23, 2024); *Capps v. JPMorgan Chase Bank, N.A.*, No. 2:22-cv-00806-DAD-JDP, 2023 WL 3030990, at *7 (E.D. Cal. Apr. 21, 2023). Furthermore, Experian's participation in this litigation thus far has been limited to answering the complaint, serving initial disclosures, participating in a joint status report, engaging in settlement talks, and stipulating to certain motions—routine matters that do not rise to the level of actively litigating the merits of a case. *See Magno v. Experian Info. Sols., Inc.*, No. C17-5478, 2018 WL 2984979, at *3 (W.D. Wash. June 14, 2018) (finding no litigation conduct based waiver when defendant "has not litigated any issue in this case other than its present motion to compel arbitration"). While Evitt and defendants Trans Union and Equifax have engaged in discovery, their conduct is largely irrelevant to whether Experian waived its arbitration rights. *Morgan*, 596 U.S. at 417 ("To decide whether a waiver has occurred, the court focuses on the actions of the person who held the right;

the court seldom considers the effects of those actions on the opposing party.").

Having considered the totality of Experian's conduct in this case, the Court finds that Evitt has failed to establish that Experian intentionally acted inconsistently with its right to compel arbitration. *See Armstrong*, 59 F.4th at 1016 (finding no waiver when defendant moved to compel arbitration within a year of plaintiff's filing of his complaint and never sought or obtained a ruling on the merits in the interim). Experian therefore has not waived that right.

**E.     This Case is Stayed as to Experian Pending Completion of Arbitration**

Experian requests that the Court stay further litigation of this case pending resolution of arbitration. Dkt. No. 42 at 13. Section 3 of the FAA provides that the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. Evitt does not address Experian's stay request in its opposition to Experian's motion to compel arbitration. *See generally* Dkt. No. 48. The Court stays this action as to Experian pending arbitration proceedings.

### III.   CONCLUSION

For the foregoing reasons, the Court ORDERS the following:

1. Experian's motion to compel arbitration, Dkt. No. 42, is GRANTED;
2. Experian's motion for a stay of discovery and for a protective order pending resolution of its motion to compel arbitration, Dkt. No. 44, is DENIED as moot;
3. This case is STAYED as to Experian only pending the completion of the arbitration proceedings; and

//

//

//

4. Evitt and Experian shall file a joint Notice setting forth the status of the arbitration proceedings on or before May 8, 2024, and every 30 days thereafter until the conclusion of the arbitration, and shall notify the Court within seven days of the conclusion of the arbitration.

Dated this 8th day of April, 2024.

*Lauren King*
Lauren King
United States District Judge